## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MONTANA BELL,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-1746** |
| **v.** | : | **(JUDGE MANNION)** |
| **GLENN HAINES,** *et al.,* | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

I.   <u>BACKGROUND</u>

Plaintiff, Montana Bell, an inmate formerly confined in the State Correctional Institution at Benner Township ("SCI-Benner Township"), Bellefonte, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1-2). The named Defendants are the following SCI-Benner Township employees: Correctional Officers Glenn Haines, Chadwick Montgomery, Donovan Brant, Paul DiGennaro, Matthew Coffey and Andrew Lytle, Sgt. Jeffrey Koch, Lt. Paul Foster, Lt. Andrew Wian, and Captain Scott Klinefelter. <u>Id</u>.

---

[1] Plaintiff is currently housed at the Fayette State Correctional Institution, LaBelle, Pennsylvania.

Plaintiff seeks compensatory and punitive damages for an incident which allegedly occurred on August 10, 2016, wherein Bells asserts that he "was the victim of an assault by prison officials during an escort to medical for his dental appointment." Id.

Specifically, Plaintiff alleges that he was washing his clothes when he was alerted over the intercom that he had a dental appointment. Id. Plaintiff states that Defendant Haines and Montgomery approached his cell as the escorting officers and "informed [him] that he had to be strip searched first." Id. Plaintiff asserts that he informed Defendant Montgomery that his underclothes were wet from washing as he stripped out of his jumpsuit. Id. When the search was completed, Plaintiff was handcuffed by Defendant Montgomery while Defendant Haines called for the door to be opened. Id. According to Plaintiff, as the cell door was opening, Defendant Haines "informed Montgomery 'We can kick his ass'." Id. Plaintiff claims that he then "stepped out of his cell on high alert," when, at the same time, Defendant Montgomery asked Plaintiff why he wasn't wearing an undershirt. Id. Plaintiff then responded "I told you it's wet from being washed. I can't wear a wet shirt." Id. Plaintiff states that Defendant Haines then "told [Plaintiff] in a threatening manner, 'If you don't get back in your cell and put that shirt on, we gone (sic) kick your black ass,' or words to that effect." Id. Plaintiff claims

that "out of fear for his safety and wellbeing, [he] requested to speak with Defendant Wian, the Lt. on shift." Id. He claims that he then "screamed out" after being denied his request by Haines. Id. At that time Plaintiff claims that both Defendants "started to aggressively" move toward Bell and Bell "now in fear of being beat, jumped and/or 'getting his ass kicked," planted his feet in between said Defendants and placed his back against the wall, as his only means of self-protection." Id.

Plaintiff claims that Defendants Haines and Montgomery "proceeded to forcefully push and shove [Plaintiff] in his cell and continued to move Plaintiff back into his cell and "started assaulting [him]." Id. Defendant Montgomery allegedly struck Plaintiff in the head and neck area while screaming "stop resisting." Id. According to Plaintiff, Defendants Brant, DiGennaro, Coffey, Lytle, Koch, and Wian soon joined Defendants Montgomery and Haines by pushing, kicking, and punching Plaintiff, all while he was handcuffed. Id. Plaintiff claims he was "not at all being combative or non-compliant and the use of any force was unnecessary". Id. Plaintiff also states that he screamed out in pain several times. Id.

Defendant Wian gave an order to move Plaintiff's handcuffs from the front to the back. Id. Plaintiff states that the handcuffs were applied so tight that "it cut right into his wrist, causing it to bruise and bleed profusely." Id.

- 3 -

During this time Defendant Haines squeezed Plaintiff's legs and feet causing unnecessary pain as well. Id. Once the handcuffs were moved to Plaintiff's back, Plaintiff was lifted from the floor and escorted to the medical department. Id.

Plaintiff claims to have "suffered intense pain in his head, neck, and body" for several weeks after the use of force incident. Id. Plaintiff asserts that he suffered cuts, bruising, and possible nerve damage. Id. Additionally, Plaintiff states that he suffered severe mental and emotional distress and has a constant fear of leaving his cell. Id.

Plaintiff received a misconduct written by Defendant Haines alleging that Plaintiff was assaultive towards staff. Id. On August 12, 2016, Plaintiff filed a grievance, number 638794, to report the alleged assault. Id. Plaintiff was informed that his allegation of abuse was assigned to Defendants Klinefelter and Foster for investigation. Id. Plaintiff claims that neither Defendant Klinefelter nor Foster investigated the matter; however, Plaintiff acknowledges that he received notice on March 7, 2017 that his claims of abuse were unsubstantiated. Id.

Plaintiff brings this action against each of the Defendants in their individual capacities only. Id. Plaintiff asserts state-law claims of assault and battery and negligent infliction of emotional distress and federal claims of

excessive force and calculated harassment against Defendants Haines, Montgomery, Brant, DiGennaro, Coffey, Lytle, Koch, and Wian. Id. Against Defendants Klinefelter and Foster, Plaintiff asserts a state-law negligence claim for their alleged failure to investigate his complaint of abuse. Id. He seeks compensatory and punitive damages against each Defendant jointly and severally and injunctive relief in the form of his release from the RHU to general population. Id.

On May 1, 2019, Plaintiff filed a motion for summary judgment, supported by a statement of facts, declaration and supporting brief. (Docs. 8-11). On May 16, 2019, Defendants filed a cross-motion for summary judgment and supporting statement of facts, brief and exhibits. (Doc. 12-15). The motions are fully briefed and are ripe for disposition. For the reasons set forth below, this Court will grant Defendants' motion for summary judgment.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits,

depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as

- 7 -

to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

Significantly, where events at issue have been captured on videotape, as is the case here, the court must consider that videotaped evidence in determining whether there is any genuine dispute as to material facts. See Scott v. Harris, 550 U.S. 372, 380-81 (2007).  The court must view the facts in the light depicted by the videotape. See id. (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").

"The rule is no different where there are cross-motions for summary judgment." Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is

entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." Muhammad v. Martin, No. 3:19-cv-1316, 2021 WL 832645, at *2 (M.D. Pa. Mar. 4, 2021) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." See Quarles v. Palakovich, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008)).

## III.   STATEMENT OF MATERIAL FACTS

The incident is captured on both closed-circuit and handheld video. (Doc. 13-3). The closed-circuit video depicts Defendants Montgomery and Haines arriving at Plaintiff's cell around 8:26am and leaving at 8:48am, when Plaintiff was escorted to medical. Two minutes into the incident, a handheld video was employed, capturing the events that occurred within Plaintiff's cell for the duration of the time.

The closed-circuit video opens with Defendant Montgomery and Haines approaching Plaintiff's cell. Although there is no audio, it is clear that there is an exchange between the officers, where one officer is apparently pointing into the direction of the cell, as if to request Plaintiff return to the cell. At this point, Plaintiff pushes his back up against the wall and plants his feet. The officers attempt to escort Plaintiff but taking his right arm and attempting to turn him back toward the cell. At this point, Plaintiff thrusts himself into the officers.

The Use of Force Incident Report, DC-121, fills the gaps created by the lack of audio on the surveillance video. (Doc. 13-2). The DC-121 is comprised of a report of incident completed by each employee involved. Id. From these reports, it is revealed that Defendant Haines believed all of Plaintiff's clothing was present during his strip search. Id. Both Defendant Montgomery and Haines noticed that Plaintiff had not put his undershirt on under his jumpsuit and ordered Plaintiff back into his cell. Id. When Plaintiff was directed to go back into his cell and get dressed properly, he backed himself up against the wall and refused to return to his cell. Id. As Defendants Montgomery and Haines attempted to place Plaintiff back into his cell, Plaintiff struck Defendant Montgomery in the face with the handcuffs several times. Id.

- 10 -

Defendant Montgomery placed Plaintiff against the wall until additional responding staff arrived. Id. Defendant DiGennaro responded to a radio call and, after noticing Plaintiff being physically aggressive, took control of Plaintiff's upper body to help place him against the wall. Id. Defendant DiGennaro then assisted with placing Plaintiff on the ground and took control of Plaintiff's left arm. Id. Defendant Brant also responded to the radio call and upon entering the cell noticed Plaintiff attempting to hit officers with his handcuffs. Id. Defendant Brant also assisted with placing Plaintiff on the floor to help regain control. Id. Defendant Brant controlled Plaintiff's right arm while Plaintiff was on the floor. Id. Defendant Koch responded and assisted the other officers in placing Plaintiff against the wall. Id. Defendant Koch notes that Plaintiff refused all orders to stop resisting and was then placed on the floor to regain control. Id. Defendant Koch then held onto Plaintiff's legs. Id. During the time of the incident Defendant Coffey remained on the housing unit but was not involved with restraining Plaintiff. Id. Defendant Lytle also responded to the radio call and was instructed to operate the handheld camera. Id. Defendant Wian was the RHU Lieutenant and oversaw the use of force incident but did not get involved with restraining the Plaintiff. Id.

Review of the handheld video shows that Defendants acted in a calm and collected manner in restraining Plaintiff. (Doc. 13-4). Staff can be observed securing Bell on the floor of his cell. Id. Lt. Wian can be heard directing staff members to move the handcuffs from the front of Bell and to secure him with the handcuffs behind his back. Id. Staff removes the handcuffs from the front of Bell without incident. Id. Bell is then secured with handcuffs behind his back. Id. Staff maintain control of him until medical enters the cell for assessment. Id. Because Bell is still on the floor, it is recommended that Bell be escorted to a medical triage room for evaluation. Id. At this point, the camera battery is about to die. Id. Lt. Wian calls for another battery before the camera dies. Id. Lt. Wian records the receipt of the new battery and the turning off of the camera to replace the batter as 0844. Id. At 0847, the camera is again operational, and Bell is still subdued on the floor. Id. Bell is then escorted to a triage room, where he is assessed. Id. Pictures are taken of his head, knees, and hands, while cuffed. Id. Although Plaintiff complains of injuries to these areas, there are not visible, and no medical treatment is rendered. Id. Bell is then escorted from the triage room back to his cell. Id. After securing the door of the cell, staff then removes Bell's handcuffs. Id. Staff then exit the area, and the camera operator remains at Bell's cell door for approximately five additional minutes.

- 12 -

Id. Although Bell continues to yell through the cell door that he is bleeding and holds his wrists at the window of the cell door, only a small cut on his right wrist is visible. Id. The camera operator then leaves the cell door and walks into a hallway to his right where a debriefing is conducted by Lt. Wian. Id. All officers reported their equipment was intact and only C/O Montgomery reported an injury to his head where he was hit with the handcuffs and some stiffness to his hand. Id.

## IV. DISCUSSION

Plaintiff has brought his Eighth Amendment excessive force and calculated harassment claims pursuant to 42 U.S.C. §1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. §1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685

- 13 -

(3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all'." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).

## A. **Excessive Force Claim**

The cruel and unusual punishment clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers. See Whitley v. Albers, 475 U.S. 312, 318–19 (1986). In an excessive force claim, the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34 (2010). In applying this test, courts are tasked with considering the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Id.

The reasonableness of a particular use of force is often dependent upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials overreacted to the disturbance that he caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"). Additionally, *de minimis* use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000) (citing Hudson, 503 U.S. at 6); see also Wilkins, 559 U.S. 34 (clarifying that *de minimis* force, rather than *de minimis* injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. To that end, when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain," summary judgment is appropriate. Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322).

Conversely, "when prison officials maliciously and sadistically use force to cause harm…contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. 1).

Here, the surveillance video, without audio, commences with Officers Montgomery and Haines approaching Plaintiff's cell. The officers bring Plaintiff out of his cell and it is apparent that there is an exchange between them and the Plaintiff and Officer Montgomery can clearly be seen motioning Plaintiff to return to his cell and Plaintiff refusing, planting his feet, and backing himself up to the door. As the officers attempt to turn Plaintiff toward the cell door, Plaintiff thrusts forward toward them.

The Use of Force Incident Report fills gaps created by the lack of audio on the surveillance video. Specifically, it reveals that Defendant Montgomery issued Plaintiff a direct order to return to his cell and Plaintiff refused. It further reveals that Plaintiff played a key role in the scuffle and affirms the need for Defendants to resort to the application of force. In fact, Plaintiff, himself admit that he planted his feet in between said Defendants and placed his back against the wall.

Plaintiff's complaint, coupled with the videotape evidence, clearly demonstrates that Defendants resorted to force to effect compliance only after the issuance of several direct orders to return to his cell proved ineffective and insufficient. It also reveals that Defendants fully comported with the directives contained in DC-ADM 201 which authorizes use of force against an inmate when a staff member reasonably believes such force is necessary to protect oneself or others and/or to effect compliance with the rules and regulations when other methods of control are ineffective or insufficient.

As concerns the relationship between the amount of force used and efforts made to temper the severity of a forceful response, the video shows a consistent and measured application of force by Defendants to quell Plaintiff's aggressive manner and to regain control of the situation. It does not portray any Defendant repeatedly striking Plaintiff on his head or neck, thereby dispelling Bell's assertions that Defendants pushed, kicked, punched, pulled, and yanked Plaintiff's hair. It also demonstrates that Defendants' actions complied with the DC-ADM 201 directive that when force is used, the least amount of force the staff member reasonably believes is necessary to achieve the authorized purpose is to be used. See DC-ADM 201, Section III(B). Also, importantly, once the Plaintiff was placed on the

floor, the application of force immediately ceased. Id. (stating that "the use of force must stop once control is achieved").

Finally, Plaintiff suffered a small superficial laceration to his right wrist. (Doc. 13-2 at 30, Medical Report). He was able to move, flex and extend the fingers, bilateral hands, and wrists. Although it is not required that he show more than a *de minimis* injury, see Wilkins, 559 U.S. at 39 (clarifying the notion that a significant injury is a threshold requirement for stating an excessive force claim was rejected in Hudson, 503 U.S. at 7), the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. Id. at 40 (noting that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim") (citing Hudson, 503 U.S. at 9 (internal quotations omitted).

Where a videotape refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate. See Tindell v. Beard, 351 F. App'x 591 (3d Cir. 2009). The video footage of this incident, coupled with Plaintiff's own complaint and the Use of Force Incident Report, would lead a reasonable trier of fact to find

that Defendants used the amount of force necessary to bring Plaintiff into compliance. Id. at 596; see also, Whitley, 475 U.S. at 319; Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) (noting that even a prison officer's "over-reaction" to an inmate-caused disturbance would fall short of supporting a finding of excessive force where the totality of the circumstances indicated that the force was applied in a good faith effort to maintain order). No aspect of the video, or any other portion of the record, supports an assertion that Defendants acted maliciously or sadistically to cause harm. Thus, summary judgment in Defendants' favor is appropriate.

## B. **Calculated Harassment Claim**

Plaintiff also argues that the use of force and alleged falsification of the misconduct reports violated DOC policy, which, in turn, supports a violation of the Eighth Amendment under a theory of calculated harassment. (Doc. 1).

The Eighth Amendment protects prisoners from calculated harassment. Hudson v. Palmer, 468 U.S. 517, 528 (1984). "In order for harassment to violate the Eighth Amendment, it must be more than a few isolated incidents; rather, it must be extended and targeted against a particular prisoner." Toolasprashad v. Wright, No. 02-cv-5473, 2005 WL 3536205, *6 (D.N.J. 2005) (comparing Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984) (denying prisoner few meals did not amount to harassment), and

Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993) (searching plaintiff three times could not be considered harassment), with Scher v. Engelke, 943 F.2d 921 (8th Cir. 1991), cert. denied, 503 U.S. 952 (1992) (finding harassment where prisoner's cell was searched ten times in nineteen days)). See also Rosa-Diaz v. Rivello, No. 19-cv-1914, 2020 WL 6481539, at *18 (M.D. Pa. July 10, 2020) (noting singular or isolated incidents insufficient to state a claim for calculated harassment).

Any claim Plaintiff wishes to advance regarding calculated harassment fails as a matter of law, as the facts with which he seeks to support it are limited to one isolated event: the alleged use of force against him and the misconduct reports filed thereafter due to Plaintiff's misbehavior during that incident. Plaintiff has identified no other facts or incidents that would support a pattern of harassment sufficient to constitute a violation of the Eighth Amendment. As such, summary judgment is appropriate in Defendants' favor on this issue.

### C. Remaining State Law Claims

Having determined that summary judgment is appropriate in Defendants' favor on Plaintiff's federal claims brought pursuant to 42 U.S.C. §1983, the claims which remain present issues of state constitutional, statutory, and common law, over which this court may exercise supplemental

jurisdiction pursuant to 28 U.S.C. §1367. Specifically, Plaintiff asserts a claim for assault, battery, negligence, and negligent infliction of emotional distress, which he seeks to bring pursuant to the Pennsylvania Political Subdivision Tort Claims Act. 42 Pa. C.S. §§ 8541–8564. (See Doc. 1). That Act, however, only applies to local agencies and employees, and is thus inapplicable to a claim against state agency employees, such as Defendants. See 42 Pa. C.S. §8541 (specifying "local agency or employee"). To the extent that Plaintiff would seek to assert his state claims otherwise, the Court will decline to exercise supplemental jurisdiction over them.

"The district courts may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants." Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009). Additionally, federal courts should be guided by the goal of avoiding "[n]eedless decisions of state law ... both as a matter of comity and to promote justice between the parties." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Declining to exercise supplemental jurisdiction is especially warranted when the case calls for interpreting a state constitution. See Trump Hotels & Casino

Resorts, Inc. v. Mirage Resorts, Inc., 963 F. Supp. 395, 408 (D.N.J. 1997). Further, the Third Circuit has recognized that where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so. Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). See also Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, §3567.3 (3d ed.) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").

Because Plaintiff's remaining claims concern interpretations of Pennsylvania law, and the federal claims have been dismissed before trial, the prudent course is to decline to exercise supplemental jurisdiction over the state law claims. For these reasons, the Court will dismiss Plaintiff's state law claims without prejudice, for lack of jurisdiction, in accordance with 28 U.S.C. §1367(c)(1).

## VI.  CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for summary judgment, and deny Plaintiff's motion for summary judgment.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 14, 2022**
18-1746-01